## 70842. SNELLING v. THE STATE.

(335 SE2d 475)

BIRDSONG, Presiding Judge.

The defendant, Lee Snelling, was charged with and convicted of driving under the influence of an intoxicant. See OCGA § 40-6-391. State Patrolman Eskew was on duty on the evening of April 22, 1984, and was investigating complaints concerning people drag-racing on North Belair Road in Columbia County, Georgia. He observed the defendant driving his car at an unusually slow rate of speed. He was aware of the practice of persons driving under the influence of intoxicants deviating from the normal flow of traffic — either by driving faster or slower than the other vehicles. He pulled in behind the defendant and observed him "weave across the centerline a couple of times" and pulled him over to the side of the road.

He smelled a strong odor of alcohol about his person and requested him to submit to a DUI field test, which consists of blowing into an "alcosensor" issued to him by the Georgia Department of Public Safety. The "alcosensor" is not a highly accurate indicator of the intoxication level of a person but is an investigative aid to an officer in determining whether the individual should be transported to a police station and given an approved intoximeter test. The officer obtained a reading of .11 grams percent blood alcohol on the defendant, which was close to the .12 percent prohibited by OCGA § 40-6-391 (a) (4). The "alcosensor" has a small margin of error, so the officer waited five minutes and readministered the test. He obtained the same reading on the second test and placed Snelling under arrest. The officer testified that he then advised Snelling of his implied consent rights from a card by reading it to him. The officer transported Snelling to Appling, Georgia, and said that he again advised the defendant of his implied consent rights and then administered the intoximeter test to him. The intoximeter reading was .10 percent. He waited another five minutes and administered the test a second time which gave him the same result. The defendant testified that the officer did not read him his rights at the time of his arrest, nor until after the completion of the intoximeter test. Snelling appeals from a jury verdict of guilty. *Held*:

1. The defendant enumerates as error the denial by the trial court of his motion to suppress on the ground that "the state failed to make an affirmative showing either that the accused had requested an additional chemical test and had been given an opportunity to take the test; or that he had waived his statutory right to an additional chemical test of his own choosing." In *Steed v. City of Atlanta*, 172 Ga. App. 839 (325 SE2d 165), a DUI suspect testified that he requested a blood test four times. In the face of the affirmative request for an additional test, this court held the state, in effect, should have

made an affirmative showing on the record as to the disposition of that request. The rationale was that a silent record will not satisfy the demands of OCGA § 40-6-392 (a) (3) that a suspect meaningfully be advised of a right to an independent test, including either the results of that test or that the defendant affirmatively waived the right to such a test where there is positive evidence that the defendant sought such an additional test. *Steed*, supra, p. 842.

Appellant seeks to extend the rationale of the *Steed* case so as to place a burden upon the state to show in all cases that not only was the right to an independent test explained but additionally to show that the test (by kind) was performed or that the suspect declined to exercise the proffered right.

OCGA § 40-6-392 (a) (3) provides: "(3) The person tested may have a [qualified person] of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. (4) . . . The arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section."

As we read this statute a duty is placed upon an officer who administers or causes to be administered a chemical test for alcoholic content in bodily fluids to advise the testee that he is entitled to an independent test of his own choosing. Once that duty is fulfilled by the officer, the statutory obligation is satisfied. Sworn testimony by the officer that such advice was given constitutes a prima facie showing of compliance.

As in other cases where affirmative defenses are involved, we conclude that an affirmative defense (i.e., a non-compliance by the officer or denial of an opportunity even where the rights have been enunciated) is a matter for the defendant to raise and not a matter for the state to negate (see OCGA § 16-13-50 (a); *First Bank &c. of Jonesboro v. State of Ga.*, 150 Ga. App. 436 (258 SE2d 59)). There is no evidence in this case that Snelling made an affirmative request that he be administered his own test. Thus no issue of non-compliance was raised and no burden shifted back to the state to negate a non-existent affirmative defense. At best Snelling questioned the timing of the advice but did not offer evidence that the test was denied or that he was wholly ignorant of his right.

Further consideration of Snelling's argument that this court in *Steed* mandated a sua sponte refutation of the affirmative defense by the state even when no such defense had been placed in issue requires an additional answer. Even assuming such a contention has validity, we now hold that *Steed*, supra, is not a binding precedent as one of the judges concurred in judgment only. Court of Appeals of Georgia Rule 35 (b). See also *State v. Dull*, 176 Ga. App. 152 (335 SE2d 605).

In this case the jury, and the trial court as finder of fact in the

suppression hearing, were authorized to find that the arresting officer complied with the mandate of the Code and twice advised the defendant of his implied consent rights. This is all the law requires. We are not authorized to impose additional requirements to those delineated by our legislature, which are contained in the Code. Our constitution demands that the legislative and judicial powers shall forever remain separate and distinct. Art. 1, Sec. 2, Par. 3. Legislation is the domain of the legislature and only interpretation of such codified legislation lies within the province of the courts. *Modern Homes Constr. Co. v. Burke*, 219 Ga. 710, 714-715 (135 SE2d 383); *Pearle Optical v. State Bd. of Examiners in Optometry*, 219 Ga. 364, 373 (133 SE2d 374). If the legislature wishes to lay an additional burden upon the state in cases such as the instant one, that is the prerogative of the legislature and not this court. Insofar as *Steed*, supra, may imply the refutation of an affirmative defense by the state where no such defense has been raised, that implication is negated and will not be followed. This enumeration is without merit.

2. It is contended that there was "no reasonable articulable suspicion that a traffic violation had occurred or that an occupant of the car was otherwise subject to seizure." We do not agree. Our Uniform Rules of the Road require that motor vehicles "shall be driven upon the right half of the roadway," with certain exceptions not here applicable. OCGA § 40-6-40 (a). The state patrolman testified that he observed the defendant's automobile "weave across the centerline a couple of times" before he pulled him over to the side of the road, detected a strong odor of alcohol, and then tested him for driving under the influence of an intoxicant. This is a higher order of proof than "reasonable articulable suspicion." It is direct evidence of an eyewitness of a traffic offense committed in the presence of a police officer and justified the stop of the vehicle and the seizure of the defendant. See *Vaughn v. State*, 247 Ga. 136, 137 (274 SE2d 479); *Rogers v. State*, 131 Ga. App. 136 (205 SE2d 901).

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED SEPTEMBER 24, 1985.

*Victor Hawk*, for appellant.

*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.