A01A1226. SATTERFIELD v. THE STATE.
(556 SE2d 568)

BLACKBURN, Chief Judge.

Following a jury trial, Stephen Miller Satterfield, a Georgia resident with a state driver's license, appeals his conviction for driving with an unlawful blood alcohol concentration (OCGA § 40-6-391 (a) (5)) and driving under the influence of alcohol to the extent that he was less safe (OCGA § 40-6-391 (a) (1)),[1] contending that, because the arresting officer repeated the implied consent warning improperly, the results of his Intoxilyzer breath test should have been suppressed. For the reasons set forth below, we affirm.

On appeal from a denial of a motion to suppress, this Court must construe the evidence most favorably to uphold the ruling of the trial court. *State v. Winnie.*[2] Furthermore, the trial court's application of law to facts which are undisputed is subject to de novo review. Id.

The record shows that Officer Wells pulled Satterfield over for speeding. Once stopped, Satterfield showed signs of intoxication, and Officer Wells ultimately arrested Satterfield for driving under the influence, read the implied consent warning to Satterfield, and asked him to submit to a State-administered breath test. It is undisputed that Officer Wells' first recitation of the implied consent warning was proper. After this first reading of the warning, Satterfield refused the request to submit to the breath test.

Subsequently, in response to Satterfield's questions about what was going to happen to him, Officer Wells repeated a portion of the

---

[1] Satterfield was also convicted of speeding; however, he does not challenge this conviction on appeal.

[2] *State v. Winnie,* 242 Ga. App. 228, 229 (529 SE2d 215) (2000).

implied consent warning to Satterfield; however, he altered the warning slightly. The implied consent warning applicable to Satterfield reads: " 'If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial.' " OCGA § 40-5-67.1 (b) (2). Varying slightly from this language, Officer Wells told Satterfield that his license would "automatically" be revoked if he refused to submit to the State's breath test and that evidence of his refusal "would" be used against him at trial. At that time, Satterfield changed his mind and consented to the State's breath test.

1. On appeal, Satterfield first contends that Officer Wells' use of the word "automatically" improperly altered the substance of the implied consent warning, thereby swaying his decision to submit to the breath test. Because of this alleged coercive misinformation, Satterfield argues that the results of his Intoxilyzer breath test should have been suppressed. We disagree.

As an initial matter, OCGA § 40-5-67.1 (b) (3) provides that, if an implied consent warning

> is used by a law enforcement officer to advise a person of his or her rights regarding the administration of chemical testing, such person shall be deemed to have been properly advised of his or her rights under this Code section and under Code Section 40-6-392 and the results of any chemical test, or the refusal to submit to a test, shall be admitted into evidence against such person. *Such notice shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged.*

(Emphasis supplied.)

Here, Satterfield erroneously argues that Officer Wells modified the substance and meaning of the implied consent warning because the applicable statute does not allow for the automatic suspension of a resident driver's license. Satterfield contends that the statute's provisions for an administrative review of the suspension prevents automatic suspensions. This reading of the statute is incorrect.

OCGA § 40-5-67.1 (d) provides:

> If a person under arrest . . . refuses, upon the request of a law enforcement officer, to submit to a chemical test designated by the law enforcement officer . . . , no test shall be given; but the law enforcement officer *shall* report the refusal to the department. Upon the receipt of a sworn

report of the law enforcement officer that the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391 . . . and that the person had refused to submit to the test upon the request of the law enforcement officer, the department *shall* suspend the person's driver's license . . . for a period of one year . . . , subject to review as provided for in this chapter.

(Emphasis supplied.) *Subsequent* to this suspension, the driver may, if he wishes to do so, request a limited hearing to determine the propriety of the suspension. See OCGA § 40-5-67.1 (g).

Therefore, as Officer Wells stated to Satterfield, the implied consent statute does provide for the automatic suspension of a resident driver's license upon refusing the request to take the State's chemical test. Following any such refusal, the arresting officer has an obligation to file a report and submit a sworn statement. In turn, upon the filing of this mandatory information, the statute provides that the driver's license shall be suspended for a period of one year. The fact that the suspension may subsequently be challenged, at the option of the driver, does not obviate the suspension which has already been set in place before any such hearing occurs. Accordingly, Officer Wells' statement to Satterfield that his license would be automatically suspended, rather than merely saying that it would be suspended, left the substance of the implied consent notice unchanged.

2. Satterfield also argues that Officer Wells altered the substance of the implied consent statute by telling him that evidence of his refusal "would be" offered into evidence against him at trial rather than such admission was permissive, as provided for in the statute. Again, this argument misconstrues the implied consent statute.

OCGA § 40-5-67.1 (b) (3) states that the refusal to submit to a test "shall be admitted into evidence." The bottom line, then, is that evidence of refusal will be admissible if the prosecutor wishes to proffer such information. Thus, whether Satterfield was informed that the refusal would be admitted or could be admitted, he faced the same concern in either scenario — that a trial court ultimately would consider the evidence of his refusal. Therefore, contrary to Satterfield's argument, the "would be" scenario is not more coercive than the "could be" scenario because both could result in the admission of the refusal into evidence. As such, the substance of the implied consent notice remained essentially the same, and Satterfield's decision to submit to the testing process was not improperly coerced.

Moreover, we point out that, although Satterfield testified below

that Officer Wells' statement that his license would be automatically suspended had a bearing on his decision to take the State's breath test, he made no similar mention of the statement regarding admission of the refusal against him at trial.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 20, 2001 — 

*McDonald & Cody, Douglas W. McDonald, Jr.,* for appellant.

*Gerald N. Blaney, Jr., Solicitor-General, Stephen A. Fern, Jeffrey P. Kwiatkowski, Assistant Solicitors-General,* for appellee.