A09A0732. ECONOMOS v. THE STATE.
(680 SE2d 591)

BARNES, Judge.

Following a jury trial, Nicholas James Economos was found guilty of driving under the influence, per se, OCGA § 40-6-391 (a) (5), and speeding. Economos appeals, contending that the trial court erred in denying his motion to suppress. Upon review, we affirm.

The evidence, viewed in favor of the jury's verdict per *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979), shows that an officer with the Canton Police Department stopped Economos for speeding. When he approached the vehicle he smelled alcohol, and observed that Economos' eyes were "glassy and bloodshot." Economos denied drinking, and initially refused to blow into the alco-sensor monitor. Economos told the officer that the smell might be from leakage from damaged stock in his truck, which had a Budweiser eagle on the door. The officer had Economos exit the vehicle, blow into the officer's hat, and then determined that the odor was coming from Economos. Economos confessed that he had consumed a couple of beers earlier in the day, and agreed to take the also-sensor test, which registered positive. The officer arrested Economos for DUI, placed him in the patrol car and read him the implied consent notice. After Economos agreed to take a breath test, he was taken to the police station for the state-administered Intoxilyzer 5000 test, and subsequently blew a 0.107.

After the trial court denied his motion to suppress, a jury found Economos guilty of DUI, per se, and speeding, and he now appeals.

Economos contends that the trial court erred in denying his motion to suppress his test results because the officer gave him misleading information which confused him and enticed Economos into taking the state administered breath test. We do not agree.

Before Economos agreed to take the alco-sensor test, the officer told him that "to keep your license, you have to take the state-administered test." He also told Economos that "field sobriety tests are not required," and that "we can skip A and B, and I can just put you in handcuffs." The officer told Economos that "you're going to be dadgum close," which Economos argues he interpreted to mean that the officer thought that he was not too far over the limit, and that he might pass the state-administered test.

562

The implied consent notice for suspects is stated in OCGA § 40-5-67.1 (b):

> Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial.

See *State v. Leviner*, 213 Ga. App. 99, 100 (2) (443 SE2d 688) (1994). However, this Court has held that state-administered test results are inadmissible when the implied consent warnings include "inaccurate, misleading, and/or inapplicable information," such that the defendant cannot make an informed choice regarding submitting to or refusing the state-administered test. Id. at 103 (3) (e).

Per the statute, state-administered testing is a requirement of Georgia law, not a choice. It also provides that if a party refuses testing, his or her driving privileges will be suspended for a minimum period of one year. Here, the officer's statement that to keep his license Economos must submit to the state-administered test is what, in substance, the statutory notice says as well. See *Satterfield v. State*, 252 Ga. App. 525, 527 (1) (556 SE2d 568) (2001) (Officer's "statement to Satterfield that his license would be automatically suspended, rather than merely saying that it would be suspended, left the substance of the implied consent notice unchanged."). Thus, as the statements at issue accurately reflect Georgia law, we do not find that Economos was inhibited from making an informed decision regarding the state-administered breath test.

Although Economos also argues that the officer's "dadgum close" statement coerced him into taking the state-administered breath test, the record reflects that this statement was made concerning the alco-sensor test, the result of which Economos knew before submitting to the breath test. He does not explain how this statement affected his decision to take the state-administered breath test after he was told that his alco-sensor test results were positive, such that his decision to consent or refuse was compromised.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JUNE 25, 2009.

*Leonard L. Franco*, for appellant.

*David L. Cannon, Jr., Solicitor-General, David M. McElyea, Assistant Solicitor-General*, for appellee.